**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kayla Louise Thrush, | No.  CV-20-01114-PHX-SPL |
| Petitioner, | **ORDER** |
| vs. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Petitioner Kayla Louise Thrush seeks judicial review of the denial of her application for disability insurance benefits and supplemental security income benefits under the Social Security Act, 42 U.S.C. § 405(g). (Doc. 1). Petitioner argues the Administrative Law Judge ("ALJ") erred by (1) rejecting the treating providers' assessments and (2) rejecting Petitioner's symptom testimony. (Doc. 18 at 2). She seeks a remand for benefits, or in the alternative, a remand for further proceedings. (Doc. 18 at 25).

Before the Court is Petitioner's Complaint (Doc. 1), Opening Brief (Doc. 18), Defendant Commissioner of Social Security's Response Brief (Doc. 23), Petitioner's Reply Brief (Doc. 24), and the Administrative Record (Doc. 13) (henceforth "R."). Because the Court finds legal error on the part of the ALJ, it will vacate the Social Security Administration's decision and remand for further proceedings.

## I.     BACKGROUND

Petitioner filed an application for Title II period of disability and disability insurance benefits on June 13, 2016. (R. at 14). She also filed a Title VXI application for

1
2
3
4
5

supplemental security income on July 28, 2016. (R. at 14). Petitioner alleged disability beginning May 10, 2016. (R. at 14). The Social Security Administration denied the claim after a hearing on April 12, 2019. (R. at 11–32). Petitioner requested reconsideration of the initial determination, which was denied on April 6, 2020. (R. at 1). Petitioner seeks judicial review of the denial.

6
7
8

The ALJ found Petitioner had a "severe" impairment of "ankylosing spondylitis, lumbar degenerative disc disease, status post fusion; and status post leg shortening." (R. at 18). The ALJ found Petitioner was capable of sedentary work, and that she could

9
10
11
12
13
14
15
16

> lift and carry 10 pounds occasionally and frequently; stand and/or walk for about 4 hours in an 8-hour day, and sit for about 6 hours in an 8-hour day with normal breaks; she can frequently push and pull with her bilateral upper extremities; she can occasionally operate foot controls with her right lower extremity; she can never climb ladders, ropes, or scaffolds; she can occasionally climb ramps or stairs, balance, stoop, crouch, kneel, and crawl; she can frequently reach overhead, handle, and finger bilaterally; she can have occasional exposure to non-weather-related extreme cold and extreme heat, occasional exposure to excessive very loud noise, and occasional exposure to excessive vibration; she can have no exposure to dangerous machinery with moving mechanical parts and no exposure to unprotected heights; and she requires a handheld assistive device at all times when standing.

17
18
19
20
21
22
23
24
25
26

(R. at 18–19). The ALJ gave great weight to the opinion of the state agency consulting doctor and the state examining physician who that assessed Petitioner had a sedentary residual functional capacity with sedentary limitations. (R. at 22). The ALJ rejected the testimony of the treating physicians because they used "checkbox forms" and because the assessed limitations were inconsistent with the "clinical and diagnostic findings." (R. at 22). The ALJ discredited Petitioner's testimony regarding the severity of her symptoms. (R. at 20). A vocational expert testified that Petitioner could perform work as an addressing clerk, document preparer, and food/beverage order clerk. (R. 24). The ALJ concluded Petitioner was not disabled from the alleged onset date to the date of the hearing. (R. at 25).

27
28

Petitioner alleges the ALJ erred by improperly rejecting the treating providers'

2

1    assessments and by improperly rejecting her testimony. (Doc. 18 at 2, 25).

2    ## II.      LEGAL STANDARDS

3          A person is considered "disabled" for the purpose of receiving social security

4    benefits if he is unable to "engage in any substantial gainful activity by reason of any

5    medically determinable physical or mental impairment which can be expected to result in

6    death or which has lasted or can be expected to last for a continuous period of not less than

7    12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration's decision to

8    deny benefits should be upheld unless it is based on legal error or is not supported by

9    substantial evidence. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

10   "Substantial evidence is more than a mere scintilla but less than a preponderance." *Bayliss*

11   *v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citation omitted). "Where evidence

12   is susceptible to more than one rational interpretation, the ALJ's decision should be

13   upheld." *Trevizo v. Berryhill*, 871 F.3d 664, 674–75 (9th Cir. 2017).

14         The Court "must consider the entire record as a whole, weighing both the evidence

15   that supports and the evidence that detracts from the Commissioner's conclusion, and may

16   not affirm simply by isolating a specific quantum of supporting evidence." *Id.* at 675. The

17   Court reviews "only the reasons provided by the ALJ in the disability determination and

18   may not affirm the ALJ on a ground upon which [she or] he did not rely." *Id.* The Court

19   will not reverse for an error that is "inconsequential to the ultimate nondisability

20   determination" or where the ALJ's "path may reasonably be discerned, even if the [ALJ]

21   explains [his] decision with less than ideal clarity." *Treichler v. Comm'r of Soc. Sec.*, 775

22   F.3d 1090, 1099 (9th Cir. 2014) (citing *Alaska Dept. of Envtl. Conservation v. E.P.A.*, 540

23   U.S. 461, 497 (2004)). The Court must "look at the record as a whole to determine whether

24   the error alters the outcome of the case." *Solomon v. Comm'r of Soc. Sec. Admin.*, 376 F.

25   Supp. 3d 1012, 1016 (D. Ariz. 2019) (quoting *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th

26   Cir. 2012), *superseded by regulation on other grounds*). If the error did not alter the

27   outcome, it is harmless. *Id.*

28         "If the ALJ's decision is not supported by substantial evidence or suffers from legal

error, the district court has discretion to reverse and remand either for an award of benefits or for further administrative proceedings." *Grim v. Colvin*, 128 F. Supp. 3d 1220, 1232 (D. Ariz. 2015) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir.1996); Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987)). "Remand for further proceedings is appropriate if enhancement of the record would be useful." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).

## III.   DISCUSSION

### A. Physician opinions

At issue are the opinions of a consulting physician, an examining physician, a treating physician, and a treating nurse practitioner.

#### i.   *Examining and consulting physicians*

While the opinion of a treating physician is generally "entitled to greater weight than that of an examining physician, the opinion of an examining physician is entitled to greater weight than that of a non-examining physician." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). (internal citations omitted). "The weight afforded a non-examining physician's testimony depends on the degree to which [he] provide[s] supporting explanations for [his] opinions." *Id.*

The ALJ gave weight to the examining physician for the SSA and to a consulting physician who worked for the state agency because "[t]heir opinions are supported by the treatment records as a whole and with the results of [the examining physician]'s examination of the claimant." (R. at 22). The examining physician, who examined Petitioner on March 2, 2017, diagnosed her with

> (1) kyphoscoliosis status post fusion with markedly limited range of motion of the thoracic spine…residual scoliosis, gait abnormalities, mild difficulties with balance and complaints of abnormal sensation in the entire bilateral lower extremities in no specific dermatomal or nerve root distribution. (2) chronic low back pain with decreased range of motion…atrophy of the left thigh, a subjectively positive seated and lying straight leg test in the left lower extremity, visual spasms of the paraspinal musculature of the lumbar spine, a leg length discrepancy, gait abnormality, and mild difficulties with balance….

1     (R. at 927). He cited to medical records including progress notes from Petitioner's arthritis

2     care clinic, an angiography report, and a progress note from Petitioner's primary care

3     physician. (R. at 920).

4          He opined she could stand for two hours of an eight-hour workday and sit for six to

5     eight hours of the same day, that the conditions impose limitations that will last for 12

6     continuous months, and that her use of a walker was medically necessary. (R. at 920, 927–

7     29). He noted she did not always need the walker and did not have it with her at the

8     examination. (R. at 928).

9          The consulting physician examined Petitioner's medical records on March 17, 2017

10    on reconsideration from the state agency's initial denial of disability benefits in September

11    of 2016. (R. at 87–102). She evaluated Petitioner's symptoms and stated that: (1) one or

12    more of her medically determinable impairments could reasonably be expected to produce

13    her pain or other symptoms, (2) Petitioner's statements regarding her symptoms were

14    partially consistent with the medical evidence and (3) "[a]lthough claimant's allegations

15    are generally credible, the symptoms and objective evidence do not rise to the level of

16    consideration of disabling." (R. at 99).

17         The examining and consulting physicians' opinions were mostly consistent with

18    each other; the examining physician found more limitation than the consulting physician.

19    These opinions are inconsistent with the treating physician opinion and the treating nurse

20    practitioner opinion, both of which found Petitioner unable to move about for much of the

21    day or use her hands. (R. at 22). In reviewing the opinions and independent medical record,

22    the Court finds them to be consistent with each other. Petitioner appears to be limited by

23    her medical conditions, though not in a way that is wholly disabling. When opinions of

24    non-treating or non-examining physicians are "'consistent with independent clinical

25    findings or other evidence in the record,' those opinions may serve as substantial

26    evidence." *Nevarez v. Colvin,* No. CV-12-2586-PHX-LOA, 2014 WL 1202963, at *7 (D.

27    Ariz. Mar. 24, 2014) (quoting *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)).

28    Therefore, the ALJ did not err when she gave great weight to the state agency consulting

1  physician's opinion, because those findings were consistent with the independent medical

2  record and may serve as substantial evidence.

3                 *ii.  Treating physician and nurse practitioner*

4         The ALJ gave little weight to the opinions of treating physician Dr. Bhalla and

5  treating nurse practitioner Berg. (R. at 22). Treating physician's opinions are normally

6  given "controlling weight," but they are not entitled controlling weight if the opinion is not

7  "well-supported" or inconsistent with other substantial evidence in the record. *Orn v.*

8  *Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) (citing 20 C.F.R. § 404.1527). If the treating

9  physician's opinions are not entitled controlling weight, the Administration considers

10  specific factors in determining the weight it will be given, including "length of the

11  treatment relationship and the frequency of examination" by the treating physician; the

12  "nature and extent of the treatment relationship" between the patient and the treating

13  physician; the supportability of the opinion (whether there are lab findings or other medical

14  signs); consistency with the record; and whether the treating physician specializes in the

15  area at issue. § 404.1527(c).

16         The ALJ discounted the treating physician's opinion because it was "extreme and

17  inconsistent" with the other clinical findings and with the physician's own notes. (R. at 22).

18  The ALJ also stated she gave little weight to the opinion because the physician used a

19  "checkbox form with minimal explanations." (R. at 22). First, "there is no authority that a

20  'check-the-box' form is any less reliable than any other type of form; indeed, agency

21  physicians routinely use these types of forms to assess the intensity, persistence, or limiting

22  effects of impairments." *Trevizo*, 871 F.3d at 677 n.4. ALJs are not entitled to discount

23  treating physician findings just because the findings were made using the checkbox form

24  unless the form is also inconsistent with the record. *Id. See also Garrison*, 759 F.3d at 1014

25  n.17. However, this error did not affect the ultimate outcome of the case and is thus

26  harmless. *See Solomon*, 376 F. Supp. 3d at 1016.

27         In reviewing Dr. Bhalla's notes, the Court finds they are somewhat inconsistent with

28  his findings. His findings seem to base the disability status on Petitioner's problems with

1  her back, not her hands. (R. at 805–06, 1575–76). His notes appear consistent with the

2  limitation assessments from the examining physician and consulting physician, yet he

3  found Petitioner to be disabled rather than suffering from limitations. (R. at 805, 1222).

4  The notes are consistent with the rest of the record, but his ultimate finding reaches a

5  different conclusion: disability.

6          In reviewing the record, the Court does not find Dr. Bhalla's opinion was "extreme;"

7  it is easy for this Court to see how two physicians reviewing Petitioner's record might reach

8  different conclusions as to her abilities. The ALJ did not say why the opinion was extreme.

9  Furthermore, the ALJ failed to go through the factors set forth in § 404.1527(c) to

10  determine the weight Dr. Bhalla's opinion should be given. The Court finds the ALJ erred

11  when evaluating Dr. Bhalla's testimony and encourages future ALJs to take time to issue

12  fully formed opinions consistent with the guidance in the Code of Federal Regulations.

13         Finally, the ALJ discounted the treating nurse practitioner's opinion because it was

14  "extreme and inconsistent with the medical records as a whole." (R. at 22). The opinions

15  of nurse practitioners are considered "other sources" by the Social Security Administration.

16  *Swanson v. Comm'r of Soc. Sec. Admin.*, 274 F. Supp. 3d 932, 936 (D. Ariz. 2017). Their

17  opinions are not considered "acceptable medical sources" unless they are working in

18  conjunction with and under the supervision of a physician. *Id.* Therefore, when the nurse

19  practitioner is classified as an "other source," the ALJ only need provide germane reasons

20  for discounting the opinion. *See Britton v. Colvin*, 787 F.3d 1011, 1013 (9th Cir. 2015);

21  *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

22         "The Ninth Circuit has not defined 'germane' in the context of rejecting the opinion

23  from an 'other source,'" but other courts in this district have defined "germane" in this

24  context as "relevant" or "pertinent." *Schwab v. Colvin*, 2016 WL 4168761, *9 (D. Ariz.

25  2016) (citing Black's Law Dictionary (7th ed. 1999)); *see also Harris v. Comm'r of Soc.

26  Sec. Admin.*, No. CV-19-08159-PCT-DWL, 2020 WL 5939736, at *6 (D. Ariz. Oct. 7,

27  2020).

28         Berg was unsupervised by a physician, so the ALJ had only to provide germane

1    reasons for discounting her opinion. The ALJ specifically pointed to an "unremarkable X-

2    ray study" and a "lack of joint swelling" that are inconsistent with a finding that Petitioner

3    could "less-than-occasionally" use her hands. (R. at 22). The ALJ also pointed to the nurse

4    practitioner's use of a checkbox form. (R. at 22). As stated, the checkbox form is not a

5    legitimate reason to discount testimony. While the checkbox form is not a germane reason,

6    the others given by the ALJ are. Thus, the Court finds the ALJ did not err when discounting

7    the treating nurse practitioner's opinion.

8        **B.  Petitioner testimony**

9        In evaluating a claimant's testimony, the ALJ is required to engage in a two-step

10   analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  First, the ALJ must decide

11   whether the claimant has presented objective medical evidence of an impairment

12   reasonably expected to produce some degree of the symptoms alleged. *Id*. If the first test

13   is met and there is no evidence of malingering, the ALJ can reject the testimony regarding

14   the severity of the symptoms only by providing specific, clear, and convincing reasons for

15   the rejection. *Id*. The reasons must be supported by substantial evidence. *Garrison*, 759

16   F.3d at 1014–15. The ALJ need not engage in "extensive" analysis but should, at the very

17   least, "provide some reasoning in order for [a reviewing court] to meaningfully determine

18   whether [his] conclusions were supported by substantial evidence." *Brown-Hunter v.

19   Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (internal citations omitted). Importantly, the ALJ

20   "cannot reject a claimant's subjective pain or symptom testimony simply because the

21   alleged severity of the pain or symptoms is not supported by objective medical evidence."

22   *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 n. 11 (9th Cir. 2007) (citing *Reddick v. Chater*,

23   157 F.3d 715, 722 (9th Cir. 1998)).

24       Petitioner argues the ALJ erred in rejecting her subjective symptom testimony

25   because the ALJ did not state "specific, clear, and convincing reasons" for the rejection.

26   (Doc. 18 at 21–24). She argues the ALJ rejected her symptoms based only on a lack of

27   medical evidence to corroborate their severity. (Doc. 18 at 23–24) Defendant argues the

28   ALJ did not err, because the subjective complaints were not supported by the medical

1   records, treatment has been effective, and Petitioner's activities supported the level of

2   activity assessed, which the ALJ noted. (Doc. 23 at 17).

3          The ALJ found Petitioner's "medically determinable impairments could reasonably

4   be expected to cause the alleged symptoms" but concluded her statements as to the

5   intensity, persistence, and limiting effects of those symptoms were "not entirely consistent

6   with the medical evidence and other evidence in the record." (R. at 20). There was no

7   finding of malingering. Thus, the Court looks to see whether the ALJ provided appropriate

8   reasoning for rejecting the testimony.

9          The ALJ found Petitioner's testimony to be inconsistent with the severity of her

10  conditions shown in her medical records for the following reasons: the diagnostic reports

11  did not indicate exertional limitations beyond severe spinal problems and ankylosing

12  spondylitis; the laboratory tests were positive for inflammatory arthritis but "did not

13  identify a positive rheumatoid factor;" Petitioner's sacroiliac joints showed no evidence of

14  inflammation; the X-rays of Petitioner's hands were normal; physical examinations

15  showed mostly normal movement and strength; Petitioner's symptoms responded

16  positively to treatment; and Petitioner is able to perform some household chores and care

17  for her daughter with "extensive help from her family." (R. at 20–21). The ALJ determined

18  the medical record as a whole shows Petitioner has "less-than-sedentary limitations." (R.

19  at 21).

20          *1. Petitioner's medical records*

21          The Ninth Circuit has held that "once the claimant produces objective medical

22  evidence of an underlying impairment, [the ALJ] may not reject a claimant's subjective

23  complaints based solely on a lack of objective medical evidence to fully corroborate the

24  alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) (citing

25  *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991)). However, the ALJ may consider

26  medical evidence as one factor in the credibility analysis. *Burch*, 400 F.3d at 681.

27          As outlined above, Petitioner's medical records support a finding of severe spinal

28  problems and ankylosing spondylitis. (R. at 21). The ALJ specifically cited to Petitioner's

9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16

lumbar magnetic resonance imaging studies, electrodiagnostic studies, radiographic studies, lab tests, x-rays, and physical examinations that supposedly show her condition is not as severe as she claims. (R. at 20–21, 418–19, 481, 578–82, 583, 660–61, 664–65, 698, 745, 747, 756–57, 794, 822, 844–45, 868, 874–75, 941, 1117, 1119–20, 1190, 1192–93, 1227–28, 1232–33, 1429, 1509–34, 1536–37, 1539, 1542, 1551, 1554, 1560–74). The tests and imaging studies the ALJ cited do in fact show Petitioner has scoliosis; disc desiccation, bulges, and extrusion; mild canal narrowing, and lumbar radiculopathy. (R. at 481, 583, 745). They also show she had little to no inflammation in her spine, though she tested positive for inflammatory arthritis. (R. at 578–82, 747, 794) The physical examinations show Petitioner's movement is fairly normal, although she is in a great deal of pain. (R. at 418–19, 660–61, 664–65, 698, 756–57, 822, 844–45, 868, 874–75, 941, 1117, 1192–93, 1227–28, 1232–33, 1336, 1429, 1515–16, 1536–37, 1539, 1542, 1554). The objective medical records do not fully corroborate Petitioner's testimony, however, as stated, the ALJ's credibility determination cannot rely on consistency or inconsistency with the medical records alone, so the Court must turn to the other factors the ALJ cited. *See Lingenfelter*, 504 F.3d at 1040.

17

     *2. Petitioner's course of treatment*

18
19
20
21
22
23
24

     The ALJ may consider the effectiveness of medication and treatments. 20 C.F.R. §§ 404.1529(c)(3)(iv)–(v); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling."). When a claimant responds "favorably" to conservative treatment the ALJ may discount his testimony about the severity of the condition. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039–40 (9th Cir. 2008) (citing *Parra v. Astrue*, 481 F.3d 742, 750–51 (9th Cir. 2007) and *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir.1999)).

25
26
27
28

     The ALJ cited medical records showing prescription medication helped Petitioner's pain. (R. at 862, 1228, 1326, 1509–34). Petitioner also received Remicade infusions. (R. at 785–89, 817–19). The ALJ also cited records of Petitioner's surgery, which she underwent to shorten her right leg. (R. at 1295, 1349, 1188–89). The records show Petitioner took a

1    very long time to heal, though she eventually recovered. (R. at 1177, 1182–83, 1231–40

2    1414–15, 1509–12, 1521, 1563–64, 1569, 1567–68). She began using a walker after the

3    surgery, which she still uses. (R. at 1412, 1510, 1521, 1562–74).

4         It appears the ALJ intended to show the surgery helped Petitioner's condition.

5    Based on the record, that does not appear to be the case. Petitioner did not need assistive

6    aids until after the surgery, and she was left in a great deal of pain. (R. at 1226–30, 1412,

7    1510, 1562–74). The record does show some positive response to the prescription

8    medication, which included oxycodone (a narcotic), meloxicam, and baclofen. (R. at 862,

9    1228, 1326, 1509).

10        When injections and narcotics are paired together, it is not considered conservative

11   treatment, particularly when other treatments are not helping. *See Corless v. Comm'r of*

12   *Soc. Sec. Admin.*, 260 F. Supp. 3d 1172, 1177 (D. Ariz. 2017), *see also Torres v. Colvin*,

13   No. CV-13-01398-PHX-BSB, 2014 WL 5307502, at *10 (D. Ariz. Oct. 16, 2014) (internal

14   citations omitted). Therefore, the Court finds the ALJ erred when she discounted

15   Petitioner's testimony about the severity of her condition due to her responses to treatment,

16   because it is not clear the responses were favorable, and the treatment was not conservative.

17        *3.   Petitioner's daily activities*

18        "Engaging in daily activities that are incompatible with the severity of symptoms

19   alleged can support an adverse credibility determination." *Ghanim v. Colvin*, 763 F.3d 1154,

20   1165 (9th Cir. 2014). "While a claimant need not vegetate in a dark room in order to be

21   eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports

22   participation in everyday activities indicating capacities that are transferable to a work

23   setting[.]" *Parsons v. Colvin*, 111 F. Supp. 3d 1009, 1018 (D. Ariz. 2015) (internal quotation

24   omitted). "[T]he ALJ may discredit the claimant's allegations upon making specific findings

25   relating to those activities." *Burch*, 400 F.3d at 681.

26        The ALJ erred when she discredited Petitioner's testimony due to her ability to care

27   for her daughter with help from family and perform household chores with breaks. (R. at 21,

28   295–96). That was all. When physical activities do not take up a substantial portion of the

1
2
3
4
5
6
7
8

claimant's day, they should not be used to discredit her testimony. *McNutt v. Astrue*, No. CV10-2612-PHX-DGC, 2012 WL 79085, at \*4 (D. Ariz. Jan. 11, 2012) (citing *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)). Furthermore, courts have often found that when the activities are done with assistance, they cannot be used to discount a claimant's testimony. *See, e.g., Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014); *Lopez v. Colvin*, 194 F. Supp. 3d 903, 912 (D. Ariz. 2016). Finally, childcare activities and home activities that do not translate to the workplace cannot be used to discredit symptom testimony, either. *Trevizo*, 871 F.3d at 682.

9
10

The ALJ has cited no legitimate reason to reject Petitioner's testimony, and thus erred when she did so.

11

**IV.   CONCLUSION**

12
13
14
15
16

It is in this Court's discretion to reverse and remand for an award of benefits or further proceedings. *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001). Because the Court finds the ALJ's rejection of Petitioner's testimony was unaccompanied by specific, clear, and convincing reasons supported by substantial evidence, the Court finds legal error on the part of the ALJ, and that an enhancement of the record would be useful.

17

Therefore,

18
19
20

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is **vacated and remanded** to the Commissioner of the Social Security Administration **for further proceedings** consistent with this order.

21
22

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly and **terminate** this action.

23

Dated this 30th day of July, 2021.

24
25
26

Honorable Steven P. Logan
United States District Judge

27
28

12